UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DEBBIE CONLEY,

       Plaintiff,                                         Case No. 1:10-cv-327

v.                                                         Black, J.
                                                            Bowman, M.J.

THE PROCTER & GAMBLE
COMPANY,

       Defendant.

**REPORT AND RECOMMENDATION**[1]

Plaintiff, proceeding *pro se*, filed a complaint alleging that Defendant, her former employer, the Proctor & Gable Company ("P&G"), unlawfully discriminated against her on the basis of her age and gender. This matter is now before the Court on Defendant's motion for summary judgment. (Doc. 14). Plaintiff has filed a memorandum in opposition (Doc. 15), and Defendant has filed a reply memorandum. (Doc. 16). Defendant's motion for summary judgment has been referred to the undersigned for initial consideration and a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I now recommend that the Defendant's motion for summary judgment be GRANTED.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

**I. Background**

    **A. Relevant Facts**[2]

Plaintiff began working for the Defendant in June of 1977. (Doc. 1, ¶8; Doc. 14, Affidavit of Michael Heydt ("Heydt Aff."), ¶5). In 2007, Plaintiff was transferred to the Customer Merchandising Solutions ("CMS") team where she served as a Project Manager on the Hair Care team. (Doc. 1, ¶10; Heydt Aff., ¶6). As a member of CMS, Plaintiff routinely met with suppliers regarding the design, creation and assembly of displays for the Defendant's hair care products. (Doc. 14, Affidavit of Kristine Mauro ("Maurao Aff."), ¶6). Defendant utilizes many different suppliers, and suppliers compete with each other to obtain Defendant's business. (Mauro Aff. ¶8).

In the Spring of 2009, Plaintiff was working on a CMS Hair Care team that included Scott Harvey and David Winter, both Associate Scientists. (Doc. 1, ¶¶11, 12; Heydt Aff. ¶7; Mauro Aff. ¶5). Plaintiff, Winter, and Harvey all worked closely with Defendant's suppliers to create and produce store displays for Defendant's hair care products, often meeting with supplier contacts on at least a weekly basis. (Mauro Aff. ¶7).

    **B.    Code of Conduct for Defendant Employees**

All employees are expected to abide by Defendant's Worldwide Business Conduct Manual (hereinafter, "Conduct Manual"). (Heydt Aff. ¶8, Heydt Aff., Ex. A). The Conduct Manual is designed to guide employees' business conduct and eliminate the appearance of impropriety by employees of the Defendant. (Mauro Aff. ¶9; Heydt Aff., Ex. A). The

---

[2] Plaintiff did not file any affidavits or other evidence as outlined in Fed. R. Civ. P 56(c) in opposition to Defendant's motion for summary judgment. The undisputed facts outlined above are taken directly from the allegations in Plaintiff's complaint and the proposed undisputed facts contained in Defendant's motion for summary judgment and supporting affidavits and attachments. (Docs. 1, 14).

2

Conduct Manual provides employees with guidance in such areas as general business ethics, the use of alcohol, confidentiality, conflicts of interest, and treating customers and suppliers appropriately. (Heydt Aff. ¶9; Heydt Aff., Ex. A; Mauro Aff. ¶9). The Conduct Manual states that "[t]he Company does not tolerate the use of alcohol or drugs, while a person is working or not, in a way that can adversely affect the safe and successful conduct of Company business." (Heyd Aff., Ex. A at 19).

According to the Conduct Manual,"[t]he Company does not engage in commercial bribery. Commercial bribery is giving to, or receiving from, Company customers or suppliers (or their representatives), any personal payments, bribes, or kickbacks with the expectation or effect of obtaining more favorable business terms or opportunities than would otherwise be available." (Heydt Aff., Ex. A at 22). The Conduct Manual further provides that employees are required to guard the Company's confidential information. "Confidential information means: non-public information known as a result of your position with the Company that might be of use to competitors or harmful to the Company if disclosed…" *Id.* at 26. The Conduct Manual specifically identifies an employee discussing confidential information on a cell phone while in a restaurant as a situation that raises concerns with Defendant's policy prohibiting the non-disclosure of confidential information. *Id.* Violations of the Conduct Manual will subject employees to appropriate discipline, up to and including termination. *Id.* at 7.

Employees are also expected to conduct themselves and their business in accordance with Defendant's Purpose, Values, and Principles ("PVPs"). (Heydt Aff. ¶10; Heydt Aff., Ex. B). The "integrity" PVP states that employees "always try to do the right thing," "are honest and straightforward with each other," and "uphold the values and

3

principles of Defendant in every action and decision." (Heydt Aff. ¶11; Heydt Aff., Ex. B). The "trust" PVP states that Defendant employees "believe that people work best when there is a foundation of trust." *Id.* Defendant's PVPs further state that employees should "build superior relationships with all the parties who contribute to fulfilling our Corporate Purpose, including our customers, suppliers, universities, and governments." (Heydt Aff., Ex. B).

On November 3, 2006, Plaintiff received training on Defendant's Worldwide Business Conduct Manual. (Heydt Aff. ¶12; Heydt Aff., Ex. C). The PVPs and Conduct Manual are accessible through the Company's intranet. (Heydt Aff. ¶13). On May 5, 2007, Plaintiff received training on Information Security. (Heydt Aff. ¶14; Heydt Aff., Ex. C). The Information Security training Plaintiff received on May 5, 2007 detailed Defendant's policies on maintaining the confidentiality of business information, including supplier information, and how to protect confidential data. (Heydt Aff. ¶14).

### C. Complaint and Investigation of Plaintiff's Inappropriate Interaction with Suppliers

On March 12, 2009, Michael Heydt, Defendant's Senior Manager of Human Resources, and Kristine Mauro, the Associate Director of CMS, were notified that a supplier had contacted Defendant regarding the actions of certain employees in the CMS organization, specifically Plaintiff, Harvey and Winter. (Heydt Aff. ¶15; Mauro Aff. ¶11). This supplier, a former employee of Defendant, expressed concern that Plaintiff, Harvey, and Winter, were not conducting themselves in an acceptable manner, and their actions and their relationships with suppliers were both inappropriate and in violation of Defendant's Conduct Manual. (Heydt Aff. ¶16; Mauro Aff. ¶13). The complaint stated that CMS team employees, specifically Plaintiff, Harvey, and Winter, would ask suppliers to pay for meals

4

at meetings at which Defendant's business was conducted, pay for parking fees, and pay for vacation getaways for Defendant's employees and their spouses. The supplier also stated that these CMS team members requested credit card numbers from suppliers. (Heydt Aff. ¶17; Mauro Aff. ¶14).

In addition, it was reported that Plaintiff, Winter, and Harvey were conducting face-to-face business and conference calls with respect to Defendant's business from a downtown Cincinnati bar/café, Plum Street Café. (Doc. 1, ¶19). The supplier also reported that Plaintiff, Winter, and Harvey requested that suppliers drop off documents pertaining to Defendant's business at Plum Street Café during business hours. (Heydt Aff. ¶18; Mauro Aff. ¶15). The Plum Street Café is located near the intersection of Plum Street and 5th Street in downtown Cincinnati. (Heydt Aff. ¶18). During meetings at Plum Street Café at which Defendant's business was conducted, Plaintiff, Winter, and Harvey consumed alcoholic beverages. (Doc. 1, ¶21).

In response to the complaints, Defendant immediately initiated an investigation into these allegations, which was led by Guy Lennon, another Senior Manager in Human Resources, and Heydt. (Heydt Aff. ¶20; Mauro Aff. ¶17). Lennon and Heydt interviewed at least ten (10) individuals regarding the information reported by the supplier, including current employees of Defendant, as well as individuals outside of the Company, such as suppliers who interacted closely with the CMS team. (Heydt Aff. ¶21). These interviews took place over a two-week period at the end of March 2009. (Heydt Aff. ¶22). During the investigation, a supplier informed Heydt that the supplier was asked to come to Plum Street Café for meetings with employees of Defendant, including Plaintiff, and to deliver business materials to Defendant employees, including Plaintiff, to Plum St. Café. (Heydt Aff. ¶23).

5

The investigation revealed that it was expected that suppliers would pay for lunches attended by Defendant's employees, including Plaintiff, and that suppliers did, indeed, pay for such lunches, including Plaintiff's, without reciprocation. (Heydt Aff. ¶¶24, 25). A supplier also informed Heydt that Plaintiff previously called into conference calls and conducted Defendant's business from Plum Street Café. On one such call, Plaintiff admitted she was at Plum Street Café and stated she should have "gone to the other end of the bar" to take the call. (Heydt Aff. ¶26).

Lennon and Heydt interviewed Plaintiff on March 18, 2009 and March 26, 2009. (Heydt Aff. ¶27). During the March 18 interview, Plaintiff admitted suppliers bought her lunch. (Heydt Aff. ¶28). During the March 26 interview, Plaintiff also admitted to drinking alcoholic beverages at lunch with suppliers during work hours. (Heydt Aff. ¶29). Plaintiff further stated that when she drank alcohol during lunch, she would take the afternoon off without previously notifying her manager. (Heydt Aff. ¶31). During the March 26 interview, Plaintiff admitted she was aware of Defendant's policy regarding the consumption of alcoholic beverages during work hours and that the policy prohibited the consumption of alcohol during work hours. (Heydt Aff. ¶30). Plaintiff also admitted she had known of people who had gotten in trouble for violating Defendant's policy regarding the consumption of alcohol during work hours. (Heydt Aff. ¶32).

### D. Defendant's Termination of Plaintiff

Upon completion of the investigation, Heydt determined that Plaintiff, Winter and Harvey conducted business at Plum St. Café during work hours and in violation of Defendant's Conduct Manual. (Heydt Aff. ¶34). Based on the investigation, Heydt also determined that Plaintiff, Winter, and Harvey conducted business in a manner that had a

6

negative impact on the business relationship between the Defendant and the supplier. (Heydt Aff. ¶35). Heydt further determined that Plaintiff's, Winter's, and Harvey's conduct created the potential for suppliers and/or Defendant employees to release confidential information, thereby violating Defendant's Conduct Manual. (Heydt Aff. ¶36, 37).

Heydt also found, and Plaintiff admitted, that she consumed alcohol at business lunch meetings with suppliers during work hours, in violation of Defendant's Conduct Manual. (Heydt Aff. ¶38, 39). Heydt also found that on more than one occasion Plaintiff failed to notify her managers in advance of when she decided to take vacation or personal days in the afternoon after drinking alcohol during lunch. (Heydt Aff. ¶40). Heydt concluded that Plaintiff's actions had a negative impact on Defendant's relationship with its suppliers. (Heydt Aff. ¶42)

Thereafter, Lennon and Heydt recommended to Mauro that the Defendant terminate Plaintiff's employment due to her actions of drinking alcoholic beverages during work hours, conducting business in a local bar/café, failing to properly notify leadership of her work hours or locations, and negatively impacting Defendant's relationship with its suppliers. (Heydt Aff. ¶44; Mauro Aff. ¶22). Lennon and Heydt also recommended to Mauro that Defendant terminate Winter and Harvey based on the results of the investigation, which established that they also drank alcoholic beverages during work hours, conducted business in a local bar/café, failed to properly notify leadership of work hours or location, and negatively impacted Defendant's relationship with its suppliers. (Heydt Aff. ¶45; Mauro Aff. ¶23).

On March 31, 2009, Mauro made the decision to terminate Plaintiff based on her violations of Defendant's Conduct Manual and PVPs. (Mauro Aff. ¶24). On March 31, 2009, Mauro made the decision to terminate Winter and Harvey based on their violations of

7

Defendant's Conduct Manual and PVPs. (Mauro Aff. ¶25). On April 2, 2009, Heydt and Mauro met with Plaintiff and terminated her employment effective that day. (Heydt Aff. ¶47; Mauro Aff. ¶26). Winter and Harvey were also terminated that same day. (Heydt Aff. ¶ 49, 51). At the time of her termination, Plaintiff was 54 years old. (Heydt Aff. ¶48). At the time of their terminations, Winter and Harvey, both males, were 40 and 48 years old, respectively. (Heydt Aff. ¶50, 52).

Plaintiff filed a charge with the Equal Employment Opportunity Commission alleging she was discriminated against because of her age and gender as a result of her termination. On February 19, 2010, the EEOC issued a Dismissal and Notice of Right to Sue on the basis that it was "unable to conclude that the information obtained establishes violations of the statutes." Plaintiff then filed the instant lawsuit against Defendant on May 20, 2010. (Doc. 1).

**II. Analysis**

    **A. Summary Judgment Standard of Review**

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most

favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support her claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369,

9

379 (6th Cir. 2007)).

In this case, Plaintiff has failed to present anything more than her own conclusory allegations in support of her claims. Plaintiff has not provided any affidavits, deposition testimony, or other evidence in opposition to Defendant's motion for summary judgment as required under Rule 56. *See Anderson*, 477 U.S. at 252. Instead, she merely disputes the facts as presented in Defendant's supporting affidavits. However, where defendants have carried their burden of demonstrating no genuine issues of material fact, a plaintiff "must do more than rely merely on the allegations of [his] pleadings . . .; [he] is obligated to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits,' showing that there is a genuine issue for trial." *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(e)(2)). Conclusory allegations, standing alone, are insufficient to demonstrate a genuine issue for trial.

### B. Plaintiff's Claims and Grounds for Defendant's Motion

Plaintiff's complaint alleges that Defendant terminated her because of her age and gender in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, et seq. and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. (Doc. 1). Defendant now moves for summary judgment. Defendant argues that Plaintiff cannot establish a *prima facie* case of age or gender discrimination because she cannot identify any similarly situated non-protected employees that were treated more favorably. Defendant further argues that Plaintiff was terminated due to her admitted violations of Defendant's Conduct Manual; Plaintiff cannot show that Defendant's reason for terminating her was a pretext for unlawful discrimination. In response to Defendant's motion for

summary judgment, Plaintiff submitted: (1) a one-page memorandum; (2) an email from Plaintiff to Defendant's counsel, Amy Keegan; (3) the coverpage of Defendant's motion for summary judgment; (4) Ms. Keegan's Affidavit filed in support of Defendant's motion for summary judgment; and (5) the certificate of service of Defendant's motion for summary judgment. (*See* Doc. 15). With the exception of alcohol consumption during business hours, Plaintiff's memorandum asserts that facts presented by Defendant are untrue and that she did not engage in some of the misconduct that formed the basis for her termination. *Id.* Plaintiff further asserts that her termination was discriminatory because, out of three employees terminated, she was the only one close to retirement. *Id.*

### 1. Applicable Law

The ADEA and Title VII make it unlawful for an employer to discharge an individual or to otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's age or gender. 29 U.S.C. § 623(a); 42 U.S.C. § 2000e-2(a)(1). The same evidentiary framework applies to discrimination claims brought under Title VII and the ADEA. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). A plaintiff may establish a discrimination claim by either direct or circumstantial evidence. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.*

In an age discrimination case, whether a plaintiff seeks to prove her case by direct or circumstantial evidence, she has the burden of persuasion to demonstrate "that age was the 'but-for' cause of [her] employer's adverse action." *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Gross v. FBL Fin. Services, Inc.*, 129 S.Ct. 2343, 2351 n.4 (2009)). Where a plaintiff seeks to establish her age discrimination claim by circumstantial evidence, the claim may be analyzed under the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 802-804 (1973).[3] See *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 n.2 (6th Cir. 2010) (citing *Geiger*, 579 F.3d at 622).

A plaintiff who lacks direct evidence of discrimination may establish a *prima facie* case of discrimination through circumstantial evidence by showing that: 1) she is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position lost; and 4) she was replaced by an individual outside the protected class. *See Mitchell*, 964 F.2d at 582. Plaintiff may also establish the fourth prong of a prima facie case of discrimination by showing that she was treated less favorably than a

---

[3] In *Gross v. FBL Financial Services, Inc.*, the Supreme Court recently emphasized that with both direct and circumstantial evidence, the burden of persuasion remains on ADEA plaintiffs to demonstrate "that age was the 'but-for' cause of their employer's adverse action." --- U.S. ----, 129 S.Ct. 2343 (2009). *Gross* rejected the use of the burden-shifting framework for claims based on direct evidence of discrimination. The *Gross* Court also expressly declined to decide whether the McDonnell Douglas test applies to age discrimination claims under the ADEA. *Id*. at 2349 n. 2. While *Gross* specifically rejected the burden-shifting framework for claims of direct evidence, as discussed above, the Supreme Court expressly declined to decide whether the *McDonnell Douglas* test applies to the ADEA. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009). The Sixth Circuit, however, has long recognized the differences between Title VII and the ADEA and found the *McDonnell Douglas* framework useful in analyzing circumstantial evidence of ADEA claims. *Id.* Plaintiff has not presented any direct evidence of discrimination and therefore her claims must be analyzed based on circumstantial evidence. The *McDonnell Douglas* test remains good law in this circuit and can still be used to analyze ADEA claims based on circumstantial evidence. *Id.*

similarly-situated individual outside the protected class. *See Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002). The fourth prong is modified for an age discrimination claim to require replacement by a "substantially" or "significantly" younger person, which may include an individual within the protected class. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312-313 (1996); *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). In *Grosjean*, the Sixth Circuit established a bright-line rule whereby the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant. *Grosjean,* 349 F.3d at 340

The employer is entitled to summary judgment if the plaintiff does not establish a *prima facie* case. If the plaintiff establishes a *prima facie* case, the employer can overcome the *prima facie* case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* at 804.

The Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the employer's decision; or 3) the reasons were insufficient to warrant the decision. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross,* 129 S.Ct. 2343. The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, *i.e.*, the reason is factually false. *Id.* The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even

though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. *Id.* If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. *Id.* For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, the plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. *Id.*

The Sixth Circuit has cautioned that *Manzer's* three-part test is not to be applied in a formalistic manner. *See Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). Rather, the court must bear in mind that "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* The court must ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation and, if so, how strong the evidence is. *Id.* The Sixth Circuit in *Chen* explained,

> At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, her prima facie case is sufficient to support an inference of discrimination at trial. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993). But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation. *See Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 148 (2000). ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

*Id.*

A plaintiff must allege more than a dispute over the facts upon which her discharge was based in order to establish pretext. *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-494 (6th Cir. 2001). She must put forth evidence that demonstrates the employer did not "honestly believe" in the proffered nondiscriminatory reason for its adverse employment action. *Id.* (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)). An employer has an honest belief in its nondiscriminatory reason for discharging the employee "where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citing *Chrysler Corp.*, 155 F.3d at 807). As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. *Majewski*, 274 F.3d at 1117 (citing *Chrysler Corp.*, 155 F.3d at 806).

Summary judgment in favor of a defendant is appropriate where the plaintiff fails to establish a *prima facie* case or is unable to demonstrate pretext sufficient to rebut the defendant's legitimate, non-discriminatory reasons. *Barnhart v. Peckrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1395 (6th Cir. 1993). "The ultimate burden of persuasion remains with the plaintiff to prove that the employer's reasons were a pretext for discrimination *and* that the employer intended to discriminate on the basis of race." *Thurman*, 90 F.3d at 1166 (emphasis in the original) (citing *Hicks*, 509 U.S. at 502).

### 2. Plaintiff has Failed to Establish a Prima Facie Case of Discrimination

It is undisputed that Plaintiff has satisfied the first three elements of a *prima facie* case of sex discrimination. Plaintiff is a female; she is over 40 years old; she was qualified

for her position; and she was subjected to an adverse employment action in that she was terminated from her employment.  Defendant argues, however, that Plaintiff cannot establish the fourth prong of a *prima facie* case of age or gender discrimination because she cannot show that a male or substantially younger employee was not terminated for engaging in the same conduct.  The undersigned agrees.

As detailed above, Defendant determined that Plaintiff, Winter and Harvey consumed alcohol during work hours, conducted Defendant business in public areas, failed to notify their managers fo their work hours or location, and negatively impacted Defendant's relationship with suppliers - all of which are violations of Defendant's Conduct Manual and the Purpose, Values, and Principles ("PVPs") of the Company.  (Mauro Aff. ¶25).  The undisputed facts establish that Plaintiff's CMS team members Winter and Harvey were also terminated for violations of Defendant's Conduct Manual and PVPs for engaging in the same conduct as Plaintiff.  (Mauro Aff. ¶25).  Plaintiff was 54 years old at the time of her termination.  (Heydt Aff. ¶48).  Harvey and Winter were  40 and 48 years old, respectively, at the time of their terminations, and were therefore considered significantly younger male employees for purposes of establishing the fourth prong of a *prima facie* case of discrimination. (Heydt Aff. ¶¶50, 52, 53).  *See also Grosjean,* 349 F.3d at 340

Plaintiff's opposition memorandum asserts that "[a]s far as any discrimination, I cannot prove any in this particular case other than the fact that I was the only employee close to retirement." (Doc. 15).  This statement is not made in a sworn affidavit, nor does it constitute any other form of admissible evidence as outlined in Rule 56.  More importantly, Plaintiff's statement does not dispute the fact that two significantly younger

16

males were also terminated for the same conduct. Thus, Plaintiff has failed to show that she was treated less favorably than similarly-situated individuals outside the protected class.

Accordingly, the undersigned finds that Plaintiff has failed to establish the fourth element of a *prima facie* case of age or gender discrimination. Defendant is therefore entitled to summary judgment on Plaintiff's age and gender discrimination claims on this basis.

3. *Plaintiff has Failed to Produce Evidence of Pretext*

Assuming, *arguendo*, that Plaintiff has come forward with sufficient evidence to establish a *prima facie* case of age or gender discrimination, Defendant has articulated a legitimate, non-discriminatory reason for the decision to terminate Plaintiff's employment. Defendant asserts that Plaintiff was terminated for her admitted violations of Defendant's Conduct Manual and PVPs which prohibit the use of alcohol while conducting business, prohibit the receipt of payments, bribes, or kickbacks from suppliers, and require that Defendant's confidential information be kept confidential. (Heydt Aff., Ex. A at 19, 22, 26).

At the next step of the analysis, Plaintiff must show by a preponderance of the evidence that the defendant's articulated reason is false and was a pretext for discrimination based on Plaintiff's gender and/or race. *Hicks*, 509 U.S. at 506-507. As noted above, a plaintiff can show pretext in three ways: (1) that the reason had no basis in fact, (2) that the reason did not actually motivate the termination, or (3) that the reason was insufficient to motivate the employer's action. *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir. 2009). If Plaintiff fails to carry this burden, summary judgment is appropriate. The ultimate question in every employment discrimination case is whether

the plaintiff was the victim of intentional discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000).

Plaintiff's memorandum in opposition admits that she consumed alcohol during business hours, yet also asserts that she did not engage in some of the misconduct that formed the basis for her termination. (Doc. 15).  Plaintiff's unsupported assertion, standing alone, is insufficient to create a genuine issue of disputed fact.  *See* Fed. R. Civ. P. 56(c); *Chappel*, 585 F.3d at 912.  Moreover, even if Plaintiff's assertions are correct, "as long as an employer has an honest belief in its proffered nondiscriminatory reason" for the adverse employment action, "the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."  *Majewski,* 274 F.3d at 1117.  Plaintiff has not come forward with any evidence that she did not engage in the misconduct uncovered during the investigation or that the Defendant's decision lacks any factual basis.  She has presented no facts suggesting that the Defendant's decision was riddled with error or that the Defendant's explanation did not actually motivate its decision to terminate Plaintiff.

Notably, Plaintiff argues generally that her dismissal was "unfair and unethical." (Doc. 15). However, "illegal discrimination is indeed something different from simple unfair treatment." *Timmerman v. IAS Claim Services Inc.*, 138 F.3d 952, 1998 WL 110078, at *2 (5th Cir. Feb. 20, 1998)(table).  "Title VII ... do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus." *Id. (quoting Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997).  *See also Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) ("A general complaint of unfair treatment does not translate into a charge of illegal age discrimination").  As detailed above, Plaintiff has failed to provide any evidence that Defendant's decision to terminate her was motivated by

unlawful animus.

Upon careful review, the undersigned finds that Plaintiff has not shown that the stated reasons for her termination, *i.e.* her admitted violations of Defendant's Conduct Manual, lacked a basis in fact or were insufficient to motivate the Defendant's decision to terminate Plaintiff. To the contrary, the evidence of record indicates that Defendant's decision to terminate Plaintiff was a legitimate business decision based on her admitted violations of Defendant's Conduct Manual and PVPs. Although the summary judgment standard requires that evidence of record be viewed in the light most favorable to the nonmoving party, it does not require that all bald assertions, opinions, or even genuinely held beliefs asserted by the nonmoving party be adopted wholeheartedly by a court. *Diaz v. Mitchell's Salon and Day Spa, Inc.*, No. 1:09-cv-882, 2011 WL 379097, at *7 (S.D. Ohio Feb. 2, 2011) (J. Weber).

Plaintiff's unsupported conclusions are insufficient to meet her burden of establishing that the Defendant's proffered reasons for her termination were a pretext for discrimination.

### III. Conclusion

For these reasons, the Court hereby RECOMMENDS that the Defendant's motion for summary judgment (Doc. 14) be GRANTED, and this matter be TERMINATED on the active docket of the Court.

 s/ Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DEBBIE CONLEY,

        Plaintiff,

                                  Case No. 1:10-cv-327

v.

                                  Black, J.
                                  Bowman, M.J.

THE PROCTER & GAMBLE
COMPANY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).